UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

CHERYL S. SMITH                                                                                  PLAINTIFF

       VS.                    Civil No. 2:14-cv-02139-MEF

CAROLYN W. COLVIN,                                                                            DEFENDANT
Commissioner of Social Security Administration

### **MEMORANDUM OPINION**

Plaintiff, Cheryl S. Smith, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### **I.     Procedural Background:**

Plaintiff filed her application for DIB on December 27, 2011 and SSI on July 31, 2012, alleging an onset date of May 20, 2011, due to numbness in her right arm, shoulder, neck and back. (T. 158) Plaintiff's applications were denied initially and on reconsideration. (T. 56-58, 60-61) Plaintiff then requested an administration hearing, which was held in front of Administrative Law Judge ("ALJ"), Hon. Ronald L. Burton, on March 4, 2013. Plaintiff was present, represented by counsel.

At the time of the hearing, Plaintiff was 49 years of age, had obtained the equivalent of a high education, and received specialized job training, trade, or vocational school as an auto mechanic.

(T. 159) Her past relevant work experience included working as a laborer in a factory from the 1980s to November 2007, a property manager from August 2009 through September 2010, and a millwright from March 2011 through August 2011. (T. 147-148, 159) In a pretrial memorandum the Plaintiff alleged a new onset date of August 6, 2011. (T. 210)

On June 21, 2013 the ALJ found Plaintiff's degenerative disc/joint disease and mild right carpal tunnel syndrome severe and her chronic obstructive pulmonary disease ("COPD") not severe. (T. 13-14) Considering the Plaintiff's age, education, work experience, and the residual functional capacity ("RFC") based upon all of her impairments, the ALJ concluded Plaintiff was not disabled from August 6, 2011 through the date of his Decision issued June 21, 2013. The ALJ determined Plaintiff had the RFC to perform a full range of light work. (T. 14)

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on April 16, 2014. (T. 1-5) Plaintiff then filed this action on June 13, 2014. (Doc. 1) This case is before the undersigned pursuant to consent of the parties. (Doc. 7) Both parties have filed briefs, and the case is ready for decision. (Doc. 11 and 12)

## II. Applicable Law:

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). The Court must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court

would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the Court must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III.     Discussion:

The Court must determine whether substantial evidence, taking the record as a whole, supports the Commissioner's decision that Plaintiff had not been disabled from the alleged date of onset on August 6, 2011 through the date of the ALJ's Decision issued June 21, 2013. Plaintiff raises three issues on appeal, which can be summarized as: (A) the ALJ failed to fully and fairly develop the record; (B) the ALJ erred in his RFC determination; and, (C) the ALJ erred in step four of his analysis. (Doc. 11, pp. 11-16)

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and they are repeated here only to the extent necessary.

### Fully and Fairly Develop the Record:

Plaintiff asserts the ALJ failed to fully and fairly develop the record when he failed to order additional consultative examinations. (Doc. 11, pp. 11-13) The ALJ owes a duty to a Plaintiff to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). In determining whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contained sufficient evidence for the ALJ to make an informed decision. *See Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001). The ALJ is only required to develop a reasonably complete record. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994). After reviewing the record, the undersigned finds the record did not contain sufficient evidence for the ALJ to make an informed decision, thus remand is necessary.

4

"A disability claimant is entitled to a full and fair hearing under the Social Security Act." *Halverson v. Astrue*, 600 F.3d 922, 933 (8th Cir. 2010) (internal quotations and citation omitted). Where "the ALJ's determination is based on all the evidence in the record, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," the claimant has received a "full and fair hearing." *Id*. (internal quotations and citation omitted). In the present case, Plaintiff argues, and the Court agrees, the ALJ erred when he failed to order an orthopedic examination and a pulmonary function test for Plaintiff's COPD. (Doc. 11, pp. 12-13)

On February 7, 2012, Dr. Clifford Evans, state agency medical consultant, performed a consultative physical examination. Dr. Evans did not observe a decreased grip strength in either of Plaintiff's hands. (T. 256) Plaintiff first sought treatment for her wrist in December 2012 from Dr. John Urban. (T. 287) Plaintiff testified she had an electrodiagnostic study performed her right wrist in January 2013. (T. 32) The test showed the right median was slow across the wrist compared to the ipsilateral radial and ulnar nerves. The radial and ulnar nerves were not remarkable. The right median was slow across the wrist, while the ulnar was unremarkable. (T. 300, 305) The conclusion of the study was the right median demonstrated compromised sensory and motor components with stimulation across the wrist segment. (T. 306)

Plaintiff sought treatment from Dr. Steven Smith, orthopedic surgeon with Mercy Clinic Orthopedic Fort Smith, on August 27, 2013 due to the numbness in the right hand. Plaintiff reported the pain had been ongoing for the past twenty years. Upon examination, Plaintiff had positive maneuvers for carpal tunnel syndrome. She had triggering of the third and fourth digits and tenderness over the A1 pulley third and fourth digits. (T. 314) Dr. Smith did not see any evidence of an acute fracture or dislocation of Plaintiff's right wrist. (T. 313) However, the

5

electromyography showed significant carpal tunnel syndrome. Dr. Smith believed Plaintiff would benefit from a right carpal tunnel release and a third and fourth trigger finger release. (T. 314)

On September 13, 2013, Plaintiff had a follow up examination following her carpal tunnel release and third and fourth trigger finger release. (T. 328) Plaintiff indicated she was doing well as far as the pain and was no longer triggering. She continued to have numbness around the incision; however, the numbness around her fingers was definitely different and decreasing. (T. 328) Upon examination the wounds appeared healed. She was neurovascularly intact distally and her stitches were removed. (T. 329)

The ALJ found Plaintiff's mild carpal tunnel syndrome severe; however, he imposed no limitations or restrictions regarding Plaintiff's ability to handle and finger. The Court notes that repetitive tasks that require bending of the wrists or *grasping with the hands*, including typing, cutting, sewing, playing a musical instrument, overuse of small hand tools, and use of vibrating tools are factors that can contribute to the development of carpal tunnel syndrome. *See* PHYSICIAN'S DESK REFERENCE, *Carpal Tunnel Syndrome*, http://www.pdrhealth.com/diseases/carpal-tunnel-syndrome (Last accessed July 21, 2015). It seems reasonable that an individual who has undergone surgical correction for carpal tunnel syndrome might need to avoid these activities, which do not just involve the rapid and repetitive use of their wrists, in order to prevent further complications.

Based on this additional evidence, the Court finds that remand is appropriate, as this evidence appears to indicate that plaintiff's impairments impose limitations that were more severe, during the time period in question, than the evidence before the ALJ indicated. *See Geigle v. Sullivan*, 961 F.2d 1395, 1396-1397 (8th Cir. 1992). At the very least, this new and material evidence, when considered by the undersigned, causes the Court to believe there is a reasonable likelihood it would

have changed the Commissioner's decision. *Woolf v. Shalala,* 3 F.3d 1210, 1215 (8th Cir. 1993). Therefore, on remand, the ALJ is directed to obtain an RFC from Dr. Smith, if Plaintiff still has a treating relationship with him, or to order another orthopedic surgeon to evaluate the onset of Plaintiff's carpal tunnel syndrome and to determine what her limitations and restrictions were before and after her surgery.

Plaintiff next contends the ALJ erred when he failed to order pulmonary function tests to determine the severity of Plaintiff's COPD. (Doc. 11, pp. 13) On June 6, 2012, Dr. Thinh Nguyen observed Plaintiff had shortness of breath and a chronic cough. Dr. Nguyen diagnosed Plaintiff with COPD, and refilled her Albuterol. (T. 292) In October 2012 Plaintiff's Albuterol was refilled. (T. 290) By August 2013 Dr. Urban observed Plaintiff's COPD had worsened and recommended Plaintiff obtain a spirometer test; however, one was never performed. (T. 318)

Plaintiff testified she had respiratory problems and used an inhaler. (T. 44) She could not tolerate dust or fumes; dust made her cough. (T. 44) The ALJ noted the record did not contain any imaging studies establishing chronic pulmonary disease and her physical examination did not demonstrate significant respiratory abnormalities. (T. 14) The tests were not performed because the Plaintiff did not have the financial means to obtain them. Plaintiff applied for the Mercy Charity Care program. Although she attempted, and Dr. Urban recommended, to obtain the testing, Plaintiff never received the necessary testing to determine the severity of her COPD. (T. 42-43)

After reviewing the record, the Court finds the record did not contain sufficient evidence for the ALJ to make an informed decision regarding Plaintiff's COPD, and remand is necessary for the ALJ to order a pulmonary function test, obtain an interpretation of the results, and determine an RFC detailing the limitations and restrictions imposed regarding Plaintiff's COPD. See

*Gasaway v. Apfel*, 187 F.3d 840, 842 (8th Cir. 1999); *Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000) ("[I]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." (citation and internal quotes omitted)).

### IV.    Conclusion:

Based on the foregoing, I must reverse the decision of the ALJ and remand this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. §405(g).

Dated this 22nd day of July, 2015.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE